**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| KISON PATEL, individually and on behalf of a class of similarly situated people, | ) ) ) | Case No. 15-C-8174 |
| | ) | Judge John Z. Lee |
| Plaintiff, | ) ) | |
| | ) ) | |
| v. | ) ) | |
| AT&T SERVICES, INC. and ILLINOIS BELL TELEPHONE COMPANY, | ) ) ) | |
| Defendants. | ) ) | |

**MEMORANDUM IN SUPPORT OF THE PARTIES' JOINT MOTION FOR
PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Plaintiff Kison Patel ("Plaintiff") and Defendants AT&T Services, Inc. and Illinois Bell Telephone Company (collectively "AT&T," and collectively with the Plaintiff, the "Parties") hereby move for the entry of an order granting preliminary approval of their Settlement Agreement.[1] Attached as Appendix 1 is an executed copy of the parties' Settlement Agreement and exhibits referred to therein. Attached as Exhibit E to the Settlement Agreement is the Parties' agreed upon proposed preliminary approval order, a copy of which will be submitted electronically via the Court's proposed order email. The Parties respectfully request that the Court preliminarily approve the terms of the Settlement Agreement; certify a class for purposes of settlement only (the "Settlement Class"); appoint Plaintiff as the Settlement Class Representative; appoint Curtis Warner of the law firm of Warner Law Firm, LLC as Class Counsel; approve the form, content and method of delivering notice to the Settlement Class as set out in the Settlement Agreement; and schedule a Final Approval Hearing in accordance with the deadlines proposed in the Settlement Agreement. A proposed final approval order, in the form mutually agreed upon by the Parties, is included as Exhibit B to the Settlement Agreement and is submitted herewith for the Court's consideration.

## I. INTRODUCTION

On September 17, 2015, Plaintiff Kison Patel, individually and on behalf of a nationwide putative class filed suit against AT&T[2] alleging that it violated the Telephone Consumer Protection Act ("TCPA") by placing calls using an automatic telephone dialing system and/or an artificial or prerecorded voice message to cellular telephone numbers without the prior express consent of the call recipients. Am. Comp. ¶¶ 6-8; 15. Specifically, Plaintiff claims that he

---

[1] Except as otherwise noted, capitalized terms have the same meaning as in the Settlement Agreement.

[2] Originally the case was captioned as *Patel v. AT&T Inc.* After initial correspondence with AT&T, Plaintiff amended his complaint on October 1, 2015 to name AT&T Services Inc. and Illinois Bell Telephone Company as the defendants.

received a series of collection calls related to AT&T's U-verse service that sought payment on an account for which he was not the customer of record. *Id.* at ¶ 15. Plaintiff claims that these calls violated 47 U.S.C. § 227(b)(1)(A)(3) and that he and the recipients of similar calls are entitled to statutory damages of $500 for each call made in violation of the TCPA (or up to $1,500 per call for any TCPA violations that were made willfully or knowingly). *Id.* at ¶ 17.

AT&T contends that the calls made to members of the alleged class were lawful, because, *inter alia,* many members of the purported class consented to receiving calls from AT&T by providing their cellular telephone number as a contact number for an AT&T customer account; the dialing system used by AT&T to place the calls did not constitute an "automatic telephone dialing system" as that term is defined in the TCPA, 47 U.S.C. § 227(a)(1); and the TCPA, as applied to AT&T in this case, infringes AT&T's rights under the First and Fourteenth Amendments to the United States Constitution. Moreover, AT&T contends that Plaintiff cannot represent a litigation class because determining whether any numbers other than his own were called without the consent of the number's owner would require, among other things, an individualized inquiry (culminating in a mini-trial) into the circumstances as to how that number came to be listed on an account and called by AT&T. Plaintiff disputes the validity of AT&T's defenses, but nevertheless believes that the terms reached in the class-wide settlement are fair, reasonable and adequate.

The Parties have vigorously litigated the case and thoroughly investigated the facts. Plaintiff has fully responded to AT&T's written discovery consisting of Interrogatories and document production requests. AT&T produced more than 35,000 pages of documents through formal discovery and responded to requests for additional information during the settlement process. Among the documents AT&T produced are a series of emails documenting persons

2

who claimed to have received a call from AT&T regarding a U-verse account for which they were not responsible. AT&T also produced to Plaintiff a list of the telephone numbers referred to in these emails, with the numbers that belonged to an AT&T Mobility[3] customer or that were associated with an AT&T U-verse account excluded from the list. AT&T also produced to Plaintiff call records showing the automated and/or prerecorded collection calls made to the numbers on that list. After reviewing this discovery, the Parties engaged in arm's-length negotiations, which produced an agreement in principle to settle the claims against AT&T on a class-wide basis. Subsequent arm's-length negotiations have produced an agreement on the specific terms set forth in the Settlement Agreement. The parties have made no other agreement in connection with the Settlement Agreement.

## II. TERMS OF THE SETTLEMENT AGREEMENT

1. <u>Class Definition</u>

The Settlement Class is defined to include: All subscribers to those wireless telephone numbers identified as having lodged a complaint prior to November 18, 2015, regarding receiving a communication from AT&T regarding an AT&T U-Verse account for which they were not the accountholder, excluding subscribers of AT&T wireless and/or U-verse services, as documented in Exhibit F to the Settlement Agreement.

Excluded from the Settlement Class are AT&T Mobility and U-verse customers. Those individuals are excluded because AT&T's service agreements with its customers contain arbitration provisions and consent provisions for receiving collection calls. The Parties estimate that there are approximately 7,700 members of the Settlement Class. For the purposes of settlement, the Parties agree that the class definition meets all of the requirements of Fed R. Civ. P. 23(a)(1)-(4) and (b)(3).

---

[3] AT&T Mobility is the wireless affiliate of AT&T.

2. Settlement Benefits to Settlement Class Members

Under the terms of the Settlement Agreement, each Class Member can claim a share of a $1,925,000 (one million, nine hundred twenty-five thousand dollars) Settlement Fund. Each Class Member who submits a valid claim form shall receive a base payment of $250 per person drawn on the Settlement Fund.[4] If the number of claims is such that the base payment is not sufficient to exhaust the Settlement Fund, the remainder of the Settlement Fund will be distributed on a *pro rata* basis to the claimants based on the number of automated collection calls made to the person's telephone number, as reflected in the AT&T call records produced in discovery.[5]

3. Attorney's Fees, Incentive Award and Costs of Notice and Administration

The Settlement Fund will also be used to pay an award of Attorney's Fees and Costs in the amount of $481,250. The ultimate amount of attorney's fees awarded is subject to the approval of the Court. AT&T will separately pay from the Settlement Fund for an Incentive Award to Patel of $10,000 and for all notice and administrative costs of the Settlement. The ultimate amount of Patel's Incentive Award is subject to the approval of the Court.

4. Notices

The mailing address of each Class Member will be determined from subpoenas issued to major wireless carriers (Verizon Wireless, T-Mobile, Sprint, and U.S. Cellular). Each subpoena will request customer contact information for the telephone numbers included in the Settlement Class. Written notice of the proposed settlement will be provided to the Settlement Class via

---

[4] If the number of claims made is such that a base payment of $250 per person exceeds the total amount of the Settlement Fund after accounting for attorney's fees, each claimant shall receive a uniform *pro rata* portion of the Settlement Fund.

[5] This *pro rata* distribution will be capped at $500 per call, the statutory damages under the TCPA for a violation that was not made willfully or knowingly.

4

mail, sent within thirty (30) days of receiving the last response to the subpoenas from the carriers. For any numbers whose owners are not identified in the responses to the subpoenas, the Settlement Administrator will perform a reverse look-up process to attempt to identify the owner of the number. The parties have agreed on KCC as the Settlement Administrator. KCC is an experienced Settlement Administrator. *See* http://www.kccllc.com/.

A copy of the proposed summary notice is attached to the Settlement Agreement as Exhibit C. A copy of the proposed long form notice that will be made available by the Settlement Administrator on a website dedicated to this settlement is attached as Exhibit D.

5. Claim Form

To receive payment, Class Members must submit a short Claim Form certifying that they are (or at the relevant time were) the account holder or customary user for the telephone number dialed by AT&T, that they received calls made without their consent, and that they were not a customer of AT&T Mobility's or AT&T's U-verse service at the time they received the calls. A postage-prepaid postcard Claim Form will be included with the Notice, a copy of which is attached to the Settlement Agreement as Exhibit A. Claim Forms also can be submitted online.

6. Settlement Class Representative and Class Counsel

The Settlement Agreement provides that, for purposes of settlement, Kison Patel seeks to be appointed as the Settlement Class Representative and that Curtis Warner of the law firm of Warner Law Firm, LLC (who has represented the named Plaintiff throughout this litigation) seeks to be appointed Settlement Class Counsel. A copy of Curtis Warner's declaration of his experience is attached as Appendix 2.

7. Releases

In exchange for the benefits of the Settlement, Plaintiff has agreed to dismiss this litigation with prejudice under a proposed order that embodies the Settlement Agreement within

5

it. Plaintiff and all members of the Settlement Class who do not timely opt out will release AT&T from all claims regarding the receipt of automated and/or prerecorded voice or artificial voice message calls relating to AT&T's U-verse service to their cellular telephone numbers, including all claims that arise under the TCPA.

8. Opt Out Rights and Objections

Members of the Settlement Class can opt out of the class by sending a written request for exclusion to the Settlement Administrator. So-called "class" or "mass" opt outs will not be permitted. Any individual opt-out notices must be postmarked no later than forty-five (45) days from the deadline for sending Notice. Also within forty-five (45) days from the deadline for sending Notice, any Class Member who wishes to object to the Settlement Agreement must file with the Court a written notice of the objections, along with supporting papers setting forth the grounds for objection. To file an objection, a Class Member must have submitted a Valid Claim Form.

### III. ARGUMENT IN SUPPORT OF PRELIMINARY APPROVAL

The Parties request that the Court: (i) preliminarily approve the terms of the Settlement Agreement, including the amount available for the class members, the requested amounts of attorney's fees and Plaintiff's Incentive Award, and the manner of the payment of the costs of notice and administration, as fair, reasonable and adequate; (ii) certify the Settlement Class for purposes of settlement; (iii) appoint Plaintiff as the Settlement Class Representative; (iv) appoint Curtis Warner of the law firm of Warner Law Firm, LLC as Class Counsel; (v) approve the form, content and method of delivering notice to the Settlement Class as set out in the Settlement Agreement as "the best notice that is practicable under the circumstances" (Fed R. Civ. P. 23(c)(2)(B)); and (vi) schedule a final approval hearing in accordance with the deadlines

proposed in the proposed Preliminary Approval Order. The Settlement Agreement represents the Parties' best efforts to settle this litigation on terms that are fair and reasonable under the circumstances and that adequately protect the interests of absent class members. Accordingly, the Settlement Agreement meets the threshold requirements for preliminary approval, especially since the general rule that "[f]ederal courts look with great favor upon the voluntary resolution of litigation through settlement" applies with "particular force regarding class action lawsuits." *Airline Stewards and Stewardesses Ass'n, Local 550 v. Trans World Airlines, Inc.,* 630 F.2d 1164, 1167 (7th Cir. 1980).

### A. The Settlement Agreement Should Be Preliminarily Approved.

In assessing a settlement's fairness, the Court must consider:

> (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed.

*Wong v. Accretive Health,* 773 F.3d 859, 863 (7th Cir. 2014). When parties to a class action move for preliminary (as opposed to final) approval, "[t]he hearing on the motion is not a 'fairness hearing'; its purpose is to determine whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing." *Schulte v. Fifth Third Bank,* 2010 WL 8816289 at *2 (N.D. Ill. Sept. 10, 2010). Thus, "at the preliminary approval stage, the extent of the district court's inquiry into the appropriateness of class certification and the reasonableness of the settlement terms depends, as it must, on the circumstances of the individual case. Where the size of the class is small, the cost of notice minimal, and the issues discrete, the court may be able to determine that class certification is proper and the settlement is 'within the range of possible approval' with minimal fuss." *In re*

7

*NCAA Student-Athlete Concussion Injury Litig.,* 2016 WL 305380 at *6 (N.D. Ill. Jan. 26, 2016) (Lee, J.); *Gautreaux v. Pierce*, 690 F.2d 616, 621 n.3 (7th Cir. 1982) (at the preliminary approval stage, the Court's analysis should focus on whether the settlement falls "within the range of possible approval," rather than on making a final determination of fairness.)

    1.  <u>The Settlement Agreement Is The Result of Engaged Arm's-Length Negotiations.</u>

"There is usually an initial presumption of fairness when a proposed class settlement, which was negotiated at arm's length by counsel for the class, is presented for court approval." 4 Newberg on Class Actions § 11:41; *see also Schulte,* 2010 WL 8816289 at *4 n.5. Such a presumption is appropriate here.

AT&T contests the merits of Plaintiff's claim and denies that Plaintiff could certify a class for purposes of litigation. To support his claim, Plaintiff conducted extensive fact discovery into the purpose and operation of the calls placed by AT&T to his cellular telephone as well as into those persons who claimed to have received a call from AT&T regarding a U-verse account for which they were not responsible. This discovery resulted in the production of 35,000 pages of material, including thousands of emails regarding persons who claimed to have received a call from AT&T regarding a U-verse account for which they were not responsible, a summary of the telephone numbers associated with those records, voluminous collection call data spreadsheets, and detailed and substantive interrogatory responses. This extensive factual record was relied on by the parties in conducting arm's-length settlement negotiations.

Moreover, both Parties were represented by qualified counsel in the negotiations. Plaintiff's counsel has litigated numerous class actions, including cases involving the TCPA. For its part, AT&T is represented by experienced counsel who have thoroughly investigated Plaintiff's claims and assessed their potential value and the risk of continued litigation. The Settlement Agreement is not the product of collusion; to the contrary, it reflects the independent

8

judgment of counsel for both Parties that its terms are fair and reasonable under the circumstances.

>   2. The Settlement Agreement Is a Preferable Alternative to the Risks Each Party Would Face Through Continued Litigation.
>
>       a. Plaintiff's Assessment of the Risks.

In agreeing to a Settlement Fund of $1,925,000, Plaintiff and his counsel have considered the risks inherent to litigation and the various defenses available to AT&T. A central issue in this case is whether the persons who claimed to have received a call from AT&T regarding a U-verse account for which they were not responsible had previously provided express consent for AT&T to contact them. Courts have split in other cases under the TCPA regarding whether questions of consent require an individualized inquiry and thus prevent class certification. *Compare, e.g., Vigus v. S. Ill. Riverboat Casino Cruises, Inc.,* 274 F.R.D. 229, 235 (S.D. Ill. 2011) (refusing to certify TCPA class where the "proposed class includes a substantial number of people who voluntarily gave their telephone numbers to the [defendant]"); *Jamison v. First Credit Servs., Inc.,* 2013 WL 1248306 at *13 (N.D. Ill. March 28, 2013) (declining to certify TCPA class where individualized review would be required to determin[e] whether any particular class member gave Honda his or her cellphone number"); *with Johnson v. Yahoo! Inc.,* 2016 WL 25711 at *7 (N.D. Ill. Jan. 4, 2016) (noting the split of opinion on this issue and finding that consent questions were "amenable to class-wide evidence" in this case); *Green v. Serv. Master,* 2009 WL 1810769 at *2 (N.D. Ill. 2009) ([T]he question of consent may rightly be understood as a common question and the possibility that some class may have consented is not sufficient to defeat class certification." (internal citations omitted)). While Plaintiff and his counsel believe the facts of this case make class certification appropriate, they are also aware that AT&T was prepared to present evidence to support its position that class certification was

inappropriate because individualized issues predominate, especially as to consent. In contrast, the Settlement Agreement provides substantial monetary relief to Settlement Class members without further delay.

      b. AT&T's Assessment of the Risks.

Had the Parties not settled, AT&T would have continued to vigorously defend itself and would have opposed class certification. As described above, AT&T contends that individualized issues make this case unsuitable for class treatment for purposes of litigation. Had the litigation continued, AT&T would have also argued that a substantial portion of the calls allegedly made by AT&T were not made using an automatic telephone dialing system, as that term is defined in the TCPA, and thus cannot support liability under the statute. AT&T was prepared to assert other significant defenses as well.

Nevertheless, AT&T recognizes that there are substantial uncertainties and risks inherent in continuing this litigation. Class litigation also imposes difficult burdens on managers' limited time. Moreover, AT&T recognizes that even if it ultimately prevailed in this litigation, it would likely spend a large sum for defense costs.

3. The Settlement Agreement Provides a Substantial Benefit to Class Members and Falls Within A Range of Possible Approval.

It is well-settled law that a cash settlement providing only a portion of the potential recovery will not per se render the settlement inadequate or unfair. *In re: AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. 330, 347 (N.D. Ill. 2010) (preliminary approval opinion) *final approval at* 789 F. Supp. 2d 935 (N.D. Ill. 2011). Here, the Settlement Agreement allows for a base recovery of at least $175 per person if all Settlement Class Members file a valid claim and the Court awards the full amount of attorney's fees of $481,250. An additional *pro rata* distribution based on the phone calls reflected in AT&T's records will be distributed to the

claimants should the number of claimants be insufficient to fully exhaust the Settlement Fund. This level of base payment is in line with, and exceeds, what courts have approved in other TCPA settlements. *See e.g., Lees v. Anthem Ins. Comp. Inc.* 2015 WL 3645208 at *2 (E.D. Mo. Jun. 10, 2015) (labeling a $200 per person payment in a TCPA settlement as "sizable").

### B. The Settlement Class Should Be Provisionally Certified for the Limited Purpose of Settlement

The Parties also request that the Court provisionally certify the Settlement Class for settlement purposes only. Provisional certification will permit the Claims Administrator to provide notice of the proposed settlement to the Settlement Class to inform them of the existence and terms of the Settlement Agreement, their right to opt-out or object, and the date, time and location of the formal fairness hearing.

The Settlement Class meets the requirements of Fed R. Civ. P. 23(a) in a settlement context because: (1) the thousands of potential members are too numerous to be joined; (2) class members share a common interest in seeking redress for alleged automated calls made to their cellular telephone numbers without their consent; (3) Patel's claims for violations of the TCPA are typical of the Settlement Class Members' interest in pursuing monetary damages for their TCPA claims; and (4) the Class Representative is adequate because he has no interests antagonistic to the Class's interests and is represented by experienced counsel. Furthermore, the Settlement Class meets the requirements of Fed R. Civ. P. 23(b)(3) in a settlement context.

1. Joining All Members of the Class is Impracticable.

Fed. R. Civ. P. 23(a)(1) requires that "the class [be] so numerous that joinder of all members is impracticable." This case easily meets that requirement, as the Parties have identified the telephone numbers of more than 7,500 potential Class Members.

2. There are Questions of Law and Fact Common to the Class.

11

Fed R. Civ. P. 23(a)(2) requires that there be questions of law *or* fact common to the class. This in turn means that class members' claims "must depend upon a common contention." *Wal-Mart Stores Inc. v. Dukes,* 564 U.S. 338, 350 (2011). *See also Jamie S. v. Milwaukee Pub. Schs.,* 668 F.3d 481, 497 (7th Cir. 2012) (while a "superficial" common question is not enough, "[e]ven a single [common] question" can suffice for commonality). Here, one such common question is whether the equipment AT&T used in placing automated calls to the Class Members constitutes an automatic telephone dialing system within the meaning of the TCPA.

    3.   Plaintiff's Claims Are Typical of Those of the Proposed Class.

Fed. R. Civ. P. 23(a)(3) requires that the "claims . . . of the representative parties [be] typical of the claims . . . of the class." A "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Keele v. Wexler,* 149 F.3d 589, 595 (7th Cir. 1998). Plaintiff's claim satisfies this requirement. AT&T records indicate that Plaintiff's cellular telephone number received automated collections calls related to a U-verse account. Moreover, AT&T's records indicate that it received a complaint attributed to Plaintiff's cellular telephone number regarding receiving a call from AT&T regarding a U-verse account for which he was not responsible. The class similarly consists of persons where AT&T's records reflect a complaint regarding unwanted calls processed as provided for in its policies and procedures.

    4.   Plaintiff and Class Counsel Will Fairly and Adequately Protect the Interests of the Proposed Class.

The adequacy of representation requirement is satisfied because Plaintiff's interests are co-extensive with, and not antagonistic to, the interests of the Settlement Class and because Plaintiff has an interest in this case via his individual TCPA claim for money damages against

12

AT&T. *See* Fed. R. Civ. P. 23(a)(4); *Puffer v. Allstate Ins. Co.,* 255 F.R.D. 450, 469 (N.D. Ill. 2009) (adequacy requires showing that "the named plaintiff: (1) has [no] antagonistic or conflicting claims with other members of the class; (2) has a sufficient interest in the outcome of the case to ensure vigorous advocacy; and (3) has counsel that is competent, qualified, experienced and able to vigorously conduct the litigation."). Further, Plaintiff is represented by qualified and competent counsel who has extensive experience and expertise in prosecuting complex class actions, including TCPA and other consumer cases.

     5.   The Requirements of Fed. R. Civ. P. 23(b) are Met.

The Settlement Class also satisfies the requirements of Fed. R. Civ. P. 23(b)(3), for purposes of settlement. "To qualify for certification under Rule 23(b)(3), a class must meet two requirements beyond the Rule 23(a) prerequisites: common questions of law or fact must 'predominate over any questions affecting only individual members,' and class resolution must be 'superior to other available methods for fairly and efficiently adjudicating the controversy.'" *In re AT&T Mobility Wireless Data Servs. Sales Litig.,* 270 F.R.D. at 344 (internal citations omitted). Here, predominance is satisfied for purposes of settlement because Plaintiff claims that AT&T engaged in a common course of conduct – namely, placing automated calls regarding its U-Verse service without the consent of the called parties. While AT&T does not agree that the issue of consent, if litigated, would be a common question, in the settlement context "a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial." *Smith v. Sprint Commc'ns Co. L.P.,* 387 F.3d 612, 614 (7th Cir. 2004). The proposed settlement thus eliminates the need to conduct the multitude of mini-trials that AT&T contends would be necessary to establish consent should the case go to trial. Likewise, class resolution here is superior to other methods because resolving

13

these potential complaints in one fell swoop through a class-wide settlement would achieve "economies of time, effort, and expense, and promote . . . uniformity of decision as to persons similarly situated." *Amchem Prods. v. Windsor,* 521 U.S. 591, 614 (1997).

### C. The Form and Content of Notice Proposed By the Parties Is the Best Notice Practicable Under the Circumstances

Once a settlement class is certified, "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).[6] Notice must plainly inform class members of: (i) the nature of the action; (ii) the definition of the class certified; (iii) the class claims, issues or defenses; (iv) that a class member may enter an appearance through an attorney if the member so desires; (v) that the court will exclude from the class any member who requests exclusion; (vi) the time and manner for requesting exclusion; and (vii) the binding effect of a class judgment. *Id.* Notice is adequate if it is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Eisen v. Carlisle & Jacqueline,* 417 U.S. 156, 174 (1974).

The Parties believe the Settlement Agreement establishes a notice procedure that satisfies these standards. First, the proposed Notice (Exhibit C to the Settlement Agreement) clearly communicates the information required by Fed R. Civ. P. 23(c)(2)(B)(i)-(vii). Second, the Settlement Agreement calls for a process that the Parties anticipate will provide individual notice by mail to the vast majority of Class Members. The members of the class have previously been

---

[6] Fed R. Civ. P. 23(e)(1) also requires that class members receive notice of a proposed settlement "in a reasonable manner." Here, where the Parties propose to give notice of both certification *and* proposed settlement, "notice of certification and of the proposed settlement are properly combined, but must satisfy the requirement of Rule 23(c)(2)." *Thomas v. NCO Fin. Sys. Inc.,* 2002 WL 1773035 at *7 (E.D. Pa. July 31, 2002) (citations omitted).

14

identified by their telephone numbers. The Parties will identify the owners of those telephone numbers by issuing subpoenas to the major wireless carriers. For those numbers where the subpoenas are insufficient to identify the Class Member, the Settlement Administrator will use those telephone numbers to perform a reverse lookup of class members' current or last-known address information and will then cross-reference this information with the United States Postal Services' change of address database to confirm its accuracy.

## IV. CONCLUSION

For the reasons set forth above, the Parties respectfully request that the Court enter their proposed Order: (1) preliminarily approving the terms of the Parties' Settlement Agreement; (2) conditionally certifying the Settlement Class for limited purposes of settlement; (3) appointing Plaintiff as Settlement Class Representative; (4) appointing the law firm of Warner Law Firm. LLC as Class Counsel; (5) approving the form, content and method of delivering notice to the Settlement Class set forth in the Parties' Settlement Agreement and in exhibits thereto; and (6) scheduling a final approval hearing in accordance with the deadlines provided in the Settlement Agreement.

RESPECTFULLY SUBMITTED this 22nd day of July, 2016.

| ATTORNEY FOR PLAINTIFFS | ATTORNEYS FOR DEFENDANTS |
|---|---|
| By: /s/ Curtis C. Warner | By: /s/ Hans J. Germann |
| Curtis Warner<br>Warner Law Firm, LLC<br>350 S. Northwest Hwy, Ste. 300<br>Park Ridge, IL 60068<br>(847) 701-5290<br>cwarner@warnerlawllc.com | Hans J. Germann<br>John E. Muench<br>Kyle J. Steinmetz<br>Mayer Brown LLP<br>71 S. Wacker Dr.<br>Chicago, IL 60606<br>(312) 782-0600<br>hgermann@mayerbrown.com<br>jmuench@mayerbrown.com<br>ksteinmetz@mayerbrown.com |